# CHARLESTON.

## CHILDREY *v.* CITY OF HUNTINGTON.

*(HOLT, JUDGE, absent.)

Submitted June 19, 1890.—Decided December 12, 1890.

1. DAMAGES—STREETS AND SIDEWALKS—CITIES AND TOWNS.

In an action against a city or town to recover damages for injuries received on account of an alleged defect in a sidewalk, the plaintiff must allege and prove that such street or sidewalk upon which the injury occurred was, at the time when and place where the injury was sustained, controlled and treated by the town authorities as a public street or side walk, and opened as such.

2. DAMAGES—EVIDENCE—CITIES AND TOWNS.

In such action, if the plaintiff seeks to prove that the city authorized and directed the property owner to construct the sidewalk at the point where the injury occurred in front of his premises, the records of the city-council are the best evidence as to what its action was, unless no such record was made as required by law; and parol evidence should not be received as to such action when said record-books are accessible, and can be produced.

3. DAMAGES—EVIDENCE—CITIES AND TOWNS.

If the evidence discloses that the defect in the sidewalk was the remote, and not the proximate, cause of said injury, the plaintiff is not entitled to recover.

*Campbell, Marcum & Holt* for plaintiff in error, cited: 8 Gratt. 632; Id. 636; 5 Call. 548; 4 Call. 374; Code, c. 43, s. 31; 32 W. Va. 6.

*Gibson & Michie* for defendant in error, cited: 31 W. Va. 384.

ENGLISH, JUDGE:

This was an action of trespass on the case brought by John Childrey against the city of Huntington, in the Cir-

*Case submitted before Judge Holt's appointment.

58

cuit Court of Cabell county, claiming damages for injuries sustained by him by reason of the defendant negligently allowing and permitting a certain public sidewalk within the corporate limits of said city to become and to remain in bad order and out of repair, in this: that the said defendant permitted a large hole to become and to remain in one of the planks of which said sidewalk was then and there constructed and maintained in front of what is known as the "Mitchell Property," on Seventh street, near the middle of said sidewalk. The defendant demurred generally to the plaintiff's declaration, and pleaded not guilty; the court overruled the demurrer, and, issue being joined upon said plea of not guilty, the case was submitted to a jury, who rendered a verdict for the plaintiff for one thousand two hundred dollars damages.

When the plaintiff had introduced his evidence and rested his case, the defendant moved the Court to strike out all of the plaintiff's evidence, and exclude the same from the jury, because the same was insufficient to maintain the issue on the part of the said plaintiff, and because it showed that the plaintiff was guilty of contributory negligence which alone caused the alleged injury, and because there was no proof or evidence that the sidewalk mentioned in the declaration had ever been a public sidewalk controlled and managed by the said defendant; but the Court overruled said motion and refused to strike out said evidence and exclude the same from the jury, and the defendant excepted. Thereupon the defendant introduced its witnesses before the jury, and, after the evidence had been concluded, the plaintiff moved the Court to instruct the jury as follows:

"The jury are instructed that if they believe, from the evidence in this case, that there was such defect in the sidewalk mentioned in, and as is alleged in, the declaration, and that the plaintiff was injured by reason of said defect in said sidewalk of the city of Huntington, and that such sidewalk was in the corporate limits of the defendant, and that the town or city authorities of the defendant had used and treated such sidewalk as a public sidewalk, then they should find for the plaintiff such damages as will com-

pensate for his injury, unless they further believe from the evidence that the plaintiff's own negligence contributed to the injury."

To the giving of which instruction, the defendant, by his attorney, objected, but the Court overruled the objection, and gave the jury the said instruction, and the defendant excepted; and thereupon the defendant moved the Court to give the jury the following three instructions:

"(1) The Court instructs the jury that it is not every defect in a sidewalk that renders it unsafe and out of repair. It must be such defect as to render the sidewalk unsafe for use in the ordinary mode, and though they may believe from the evidence that the sidewalk mentioned in the declaration at the place therein specified was within the corporate limits, yet they must further believe from the evidence that the city of Huntington had control and treated the same as a public walk. If the said defendant had not controlled or treated the same as a public walk, but this one had been put down by individuals for their own purposes, the city is not liable.

"(2) The Court instructs the jury that the mere fact that the sidewalk complained of was within the corporate limits of the defendant city is not sufficient to charge the city with the duty of keeping it in good repair and safe condition. To charge the city of Huntington, it must be proved that said sidewalk was a public sidewalk so treated or controlled by said defendant.

"(3) The Court instructs the jury that before the plaintiff can recover in this case, they must believe from the evidence that there was a hole in one of the planks of which the sidewalk complained of was composed and a piece broken off the edge of one of such planks is not such defect as is complained of."

To the giving of said instructions, and each of them the said plaintiff objected, which objection the court overruled as to said instructions numbered 1 and 2, and sustained the said objection as to instruction No. 3, and refused to give said instruction to the jury; and the defendant excepted to the action of the Court in sustaining the objection to said instruction No. 3. The jury having rendered a verdict for

one thousand and two hundred dollars damages, as aforesaid, the defendant moved the Court to set aside the said verdict and grant it a new trial on the ground that the said verdict was contrary to the law and evidence, and because the court erred in allowing the plaintiff to introduce oral testimony to prove that the sidewalk complained of was a public sidewalk under the control of the said defendant; but the court overruled the said motion to set aside said verdict and grant it a new trial. To this opinion and ruling of the court and to the several rulings and opinions of the court in overruling the several objections and exceptions and motions made by said defendant during the progress of the trial said defendant excepted; and thereupon the Court proceeded to render judgment upon said verdict. The defendant applied for and obtained this writ of error.

. The first error assigned by the plaintiff in error is that the court erred in permitting oral evidence of acts of control on the part of said city over the sidewalk in question to go to the jury. Our statute (Code, c. 47, s. 28) provides : "The council of such city, town or village shall have power therein to lay off, vacate, close, open, alter, curb, pave and keep in good repair roads, streets, alleys, sidewalks" *etc.*, "and to order the said sidewalks    *    *    *    to be curbed and paved and kept in good order," section 25 of the same chapter provides : "The council shall cause to be kept in a well-bound book an accurate record of all its proceedings, by-laws, acts, orders and resolutions, which shall be fully indexed and open to the inspection of any one who is required to pay taxes to such town or village."

Now what is the best evidence of the acts of the municipal corporation ? Are they to be determined by the oral testimony of some person according to his reccollection of what was done by the council years before, or are we to have recourse to its records to determine its action ? Wharton on the Law of Evidence (volume 1, § 640) says: "In this country we have numerous cases tending to show that official records kept by public administrative officers are as to third parties *prima facie* evidence of the facts entered duly by such officers in the course of their duties as well as documents recorded" *etc.* And in section 641 he says,

the same authority is assigned to the records of town-meetings, to the books of municipal corporations and to the books of the selectmen of the town, proving payments in support of a pauper *etc.* In the case of *Chapman* v. *Milton*, 31 W. Va. 385 (7 S. E. Rep. 22) this Court held : "In order to entitle the plaintiff to recover in such action, he must allege and prove that the street or sidewalk upon which the injury occurred was, at the time and place where the injury was sustained, controlled and treated by the town authorities as a public street or sidewalk, and opened as such."

Now what is the evidence that said sidewalk, at the time and place where the injury occurred, was sustained, controlled, and treated by the city authorities of Huntington as a public sidewalk? Arthur Mitchell, a witness introduced for the plaintiff, was asked : "Do you know whether that is a public sidewalk?" which question was objected to, the objection overruled, and the witness answered : "It always has been, at least the city ordered me to put it down as property-owner." "When was it the city ordered you to put it down?" Answer : "I could not exactly say." "How many years ago?" "I could not say, it must have been eight or ten years ago." The defendant moved to strike out the evidence of the witness where he said he was ordered by the city council to lay this walk; but the motion was overruled, and exception taken. On cross-examination he stated there was a plank walk there about four feet wide ; there is a hole about twelve inches long, and about three inches wide ; may be four inches ; that it continued to be three inches wide about half the way ; the hole was angular ; the north side was about three inches wide ; and, when asked, "Did you try your foot in it?" answered : "Yes, sir. You would have to stick your toe down in order to get your foot into it." And when asked, "Could a man—person—get his foot in there without stopping and sticking it in?" answered : "I would not think he could. I tried my foot, toe first, but could not put it in by stepping straight down."

Mr. Smith, a witness for plaintiff, was asked : "State whether the town had control of the sidewalk on the west side of Seventh street between Second and Third avenues ;"

and answered: "I don't recollect of its having anything to do with it; that is, I don't recollect the street committee having anything to do with it."

Capt. Gibson, who was introduced as a witness for the plaintiff, was asked: "State whether or not there is a walk on the west side of Seventh street. Do you know who caused it to be put there?" And answered: "No, sir; I do not know who put it down, nor who keeps it up. I know that it is a sidewalk there in the public street. I say it is a sidewalk in the public street in the city of Huntington; that it was laid off and kept up and repaired by the city. I say that it has been there since 1871, and I say that the city of Huntington has charge of that street and its sidewalks. Seventh street is a public street, within the management of the town; it is open, and kept open by the town; but I never saw anybody strike a lick on it." The defendant moved to strike out said answer; but the court overruled the motion, and the defendant excepted.

John Kennett, a witness for the plaintiff, was asked: "Do you know whether the city has undertaken to keep up and maintain the sidewalk there?" and answered: "Other people on this side of the street were made to repair. I know that Noble had to repair his."

Henry Childs, another witness for plaintiff, also stated that he had been in Huntington thirteen or fourteen years; and when asked, "Is there a sidewalk there that the city has undertaken to keep up and maintain?" The question was objected to, but the witness was allowed to answer as follows: "I suppose that the city had to keep it up, if the owners of the property do not. That is the way we do. If the owners of the property do not keep the sidewalk up, the city has to." After hearing the answer the court sustained the objection. Said witness also stated, in answer to the question whether the city had undertaken to keep up and maintain the sidewalks there: "Well, it has some kind of a sidewalk along the west side of Seventh street between Second and Third avenues, ever since I have been in Huntington;" and in answer to another question he stated he did not know who put it down or caused it to be put down. Robert Kyle, examined for the plaintiff, stated that he ex-

amined the place where the injury occurred; that he stuck his foot down in it; he had to turn his foot sideways, in order to get it down, and then he had to turn it over on the edge to get it out; that his foot would not slide down in the hole in a straight position; that he wore a No. 8 shoe when his feet were not sore and No. 11 if they were.

Heenan Harris, another witness for the plaintiff, when asked, "Do you know if the town had undertaken to maintain and keep up said sidewalk there?" answered: "I don't know of their ever working it along there at all."

The plaintiff, John Childrey, was asked by plaintiff's counsel, "State, if you know, whether the city of Huntington has undertaken to keep the sidewalk there;" and answered: "They have."

This was all of the testimony bearing upon this point which had been introduced by the plaintiff when he rested his case; and the motion to strike out the evidence, as insufficient to entitle him to recover, was made by the defendant. Was it sufficient, in the language used by this Court in *Chapman* v. *Milton, supra*, to "prove that the sidewalk upon which the injury occurred was, at the time and place where the injury was sustained, controlled and treated by the town authorities as a public sidewalk?" It is true that Arthur Mitchell states that the city ordered him to put it down as a property-owner, and he could not tell exactly when; that it must have been eight or ten years ago. This walk was in front of his property, and he says a piece had been split off of the plank about two inches at one end and three at the other end. But how did the city order him to put it down? Did the mayor and council go in a body and direct it, or did the street commissioner, the sergeant or a policeman direct it? He does not state.

It occurs to me that the acts of a municipal corporation can not be thus proved, unless it be first shown that it kept no record of its proceedings. It was within the power of the plaintiff to have required the production of the record-book containing the minutes and proceedings of the council of said city which would have been recognized by law as the best evidence of their transactions, see 1 Greenl. Ev. (14th Ed.) § 484; also 1 Dill. Mun. Corp. §§ 300, 301, 304.

The fact that they were not produced would tend to raise the presumption, that, if produced, their contents would not be in his favor. The sidewalks of a town or city, as I understand the law, are to be so constructed that pedestrians may use them in passing along the side of the street, using proper care; and even if the evidence offered by the plaintiff in this case was the best evidence the nature of the case would admit of, the question still is, was such evidence under the circumstances of the case by the plaintiff's own showing sufficient to entitle the plaintiff to a recovery in this action?

Looking first to the character of the defect in said sidewalk, the witnesses agree that the board had a piece split off of the end causing an aperture three inches wide at one end, and two at the other, and one foot long; that an ordinary man's foot would not go down in this place while walking erect is shown by the evidence, one witness stating that he had put his toe in first, and the other that he had to turn his foot on one side to get it in. Such a place, then, might be passed over as safe by a prudent street commissioner exercising ordinary care. The plaintiff in this case seems to have been a large man; for when one of the witnesses was asked if she helped him up, she answered: "Do you suppose I could lift a man like Mr. Childrey? You must think I have the strength of Sampson." The plaintiff had but one leg, and, taking the plaintiff's own statements, he said he was taking Will Childers home, who had been drinking and raising trouble. On the way home, he met Will's wife and his father. He (Will) threw his father down in the mud, and I arrested him. He was asked, "How came you to fall when you had hold of him? (meaning Will):" and answered, "Bill went to strike at the woman, his wife. They were in a tussle when this occurred. He aimed to get loose to hit his wife." He was again asked, "When you got your foot in the hole what occurred then?" and answered, "Well, I fell and Bill fell kind of across me," and in this manner one bone of his leg was broken.

It is then apparent that this accident and injury was occasioned by the struggle which occurred between the

plaintiff, who was a policeman, and William Childers, who was trying to pull away from him. In making this extraordinary exertion, his foot in some manner was crowded, toe first or side first into this hole, and the injury was occasioned by his being pulled or thrown down, and the weight of William Childers falling upon him. I must regard the tussle with William Childers as the proximate cause of the injury. It is evident that he could and would have passed said defect in the pavement as often as he saw proper without injury even if he had placed his foot immediately over the defective spot; and we must consider that pavements are constructed for the purpose of walking on, using ordinary care, and not as a place for a struggle like the one described. When a policeman enters his business, he assumes upon himself the ordinary risks incident to his business, and this, it seems to me, might be included as one of them. I see no error in the ruling of the court in regard to the instructions asked for by either plaintiff or defendant.

In the case of *Phillips* v. *County Court*, 31 W. Va. 478 (7 S. E. Rep. 427) it was held : "Where the defect or obstruction in the road is merely the remote cause of the injury, and the want of care or negligence of the plaintiff is the direct or proximate cause of the injury, the plaintiff can not recover." SNYDER, J., in delivering the opinion in that case, says : "It is only against accidents that result to the plaintiff while he is in the exercise of reasonable care that the county is bound to indemnify him, and generally it is a question for the jury whether the plaintiff was at the time of receiving the injury in the exercise of proper care. But where the facts are uncontroverted, the court may determine the question." See *Jenks* v. *Wilbraham*, 11 Gray, 142.

In the case of *Gerity* v. *Haley*, 29 W. Va. 98 (11 S. E. Rep. 901) this Court decided: "Where negligence is the ground of an action, it rests upon the plaintiff to trace the fault for his injury to the defendant, and for this purpose he must show circumstances under which the injury occurred, and if, from these circumstances so proven by the plaintiff, it appears that the fault was mutual, or, in other words, that contributory negligence is fairly imputable to him, he has by proving the circumstances disproved his right to

recover, and on the plaintiff's evidence alone the jury should find for the defendant."

I am therefore led to the conclusion that the facts proven by the plaintiff were not sufficient to entitle him to recover, and the motion to strike out said evidence as insufficient should have prevailed. I am further of opinion that the struggle between the plaintiff and William Childers was the proximate cause of the injury, and the defect in the sidewalk was the remote cause, and that by engaging in this struggle with said Will Childers on the sidewalk the plaintiff received the injury of which he complains.

For these reasons, the judgment must be reversed, the verdict of the jury set aside, and the cause remanded for further proceedings to be had therein, and the defendant in error must pay the costs of this writ of error.

REVERSED.    REMANDED.