## CHARLESTON.

PHILLIPS v. CITY OF HUNTINGTON.

Submitted June 17, 1891.—Decided November 28, 1891.

1. DAMAGES—MUNICIPAL CORPORATIONS—STREETS AND SIDEWALKS.
   In an action for injuries received on a street or sidewalk of a city the plaintiff makes out a *prima facie* case when he proves that the authorities of such town or city have treated the place, where the injury was received as a public street by taking charge of it and regulating it as they do other streets, and that the accident resulted from a defective sidewalk, which was out of repair.

2. DAMAGES—CONTRIBUTORY NEGLIGENCE
   Where it is claimed by the defendant that the injury was caused by the contributory negligence of the plaintiff, and such negligence appears to the court to amount to negligence *per se* or legal negligence, the court should hold that the plaintiff can not recover; but where in such an action as above described it is doubtful from the evidence whether the defect was of that plain and patent character which the plaintiff's observation prudently exercised would inform him was dangerous, or whether the defect was of that character which reasonable prudence and care could not detect at the time when the accident occurred, then the question becomes a mixed question of law and fact, appropriate for the decision of a jury, and the court will not ordinarily interfere with their verdict.

*Campbell & Holt* for plaintiff in error, cited 70 Ia. 436; 30 N. W. Rep. 861; 11 East 60; Beach Con. Neg. § 4; 31 W. Va. 842; Id. 477; 33 W. Va. 548.

*Doolittle & Bryan* and *Gibson & Michie* for defendant in error, cited 15 W. Va. 300; 30 W. Va. 40; 1 Min. Inst. 28; 16 W. Va. 307.

LUCAS, PRESIDENT:

This was an action on the case, brought by the plaintiff against the city of Huntington for an injury received by the plaintiff by reason of a loose plank on Fourth avenue in West Huntington. The plaintiff, to maintain his action, introduced the charter of the city, which, as hereto-

fore construed by this Court, requires said city to keep its streets and sidewalks in repair, within the meaning of section 53 of chapter 43 of the Code. See *Moore* v. *City of Huntington*, 31 W. Va. 842 (8 S. E. Rep. 512.) The plaintiff further introduced a properly certified order of the city by its common council, dated in 1886, directing the street commissioner to notify all lot-owners in West Huntington to put down a plank sidewalk *etc.* He then proved by several witnesses, one of whom was the marshal of the city, that the side walk in question had been constructed under the order of the council previously introduced, and that the street commissioner of the city, since the date of said order, (1886) had required this sidewalk, and the city had claimed and exercised jurisdiction over the same ; that the city had elected its city marshal, a person who resided in West Huntington, east of and near the place of the accident. Plaintiff further proved "that the place of said injury to the plaintiff was in front of the McIntosh property, is within the corporate limits of the city of Huntington, but witness was not along with surveyor when city was run off." With reference to the injury itself there was no other testimony than that of the plaintiff. During the progress of the trial one of the plaintiff's witnesses proved as follows :

"That the city had always claimed and exercised jurisdiction in West Huntington at and near the place of said accident through its various officials; that said place place is within the corporate limits of said city, and that the western boundary line of said city is a lane, below the Verlander property and west of the McIntosh place ; *that his, (Mitchell's) lot and the McIntosh are both out of the Sam'l W. Johnston farm, and, with other lots on the north side of said avenue, sold off of said farm by said Johnston prior to the year 1872, and before the Johnston farm was excluded from the city limits by an act of the legislature in 1872; that said Johnston farm is no part of the Central Land Company's land ; that all of said Johnston land was taken in and included in the corporate limits of the city of Huntington, but that he (Johnston) after having sold off a number of lots on the north side of said avenue, went to the legislature, and got the balance of the farm excluded.*

So much of said evidence as is in italics above is the subject of the appellant's second bill of exceptions, it being certified by the court that before the plaintiff had rested his case the defendant moved the court to strike out and exclude from the jury that portion above italicized, which the court refused to do.

Defendant's third bill of exceptions is founded upon a refusal of the court to grant an instruction requested by the defendant. The plaintiff offered two instructions, which were granted by the court, and the defendant makes them the subject of its fourth bill of exceptions. The instructions were as follows :

"The court instructs the jury that our statute (chapter 43, s. 53, Code W. Va.) imposes an absolute liability upon the defendant, the city of Huntington, for any injury sustained by the plaintiff by reason of the failure of the defendant to keep the sidewalk in the declaration mentioned in repair : provided, they are satisfied from the evidence in this case that the place of the alleged injury to the plaintiff was within the corporate limits of the defendant, and that such sidewalk was, at the time and place where the alleged injury occurred, controlled and treated by the defendant as a public sidewalk, and opened as such ; and provided, further, that the plaintiff was not guilty of any negligence that contributed to such injury."

"The court further instructs the jury that, if they find for the plaintiff, that then the plaintiff is entitled to recover all damages proved by him as caused by the alleged injury, and that in estimating his damages they will consider the evidence in relation to plaintiff's loss of time occasioned by his injury; also the evidence in relation to his pain and suffering resulting from such injury, and the evidence in relation to the extent and permanency of said injury."

The defendant, to meet the issue on its part, introduced an act of the legislature, as follows: "An act for the relief of Samuel W. Johnston, passed Feb. 28, 1872. Be it enacted by the legislature of West Virginia that the farm of Samuel W. Johnston, on which he now resides, be, and the same is hereby, excluded from the corporate limits of the city of Huntington." The defendant then proved by Fos-

ter Stewart, a member of the city council, and a resident of Cabell County for forty years, that the McIntosh property, and that portion of West Huntington through which Fourth avenue runs, and where the accident occurred, is all a part of the Samuel W. Johnston land—was sold out of the same. The defendant then proved by H. C. Simms that he had been city solicitor for several years; that he did not know where the western boundary line is, and did not belive any one else does; that there has been a dispute since the passage of the above set out act of the legislature whether or not the portion of West Huntington where the injury occurred is within the corporate limits of said city of Huntington.

Defendant also asked for the following instruction, which the court refused, and exception was reserved: "If the jury believe from the evidence in the case that the Samuel W. Johnston farm, on which he resided in 1872, was excluded from the corporate limits of the city of Huntington by an act of the legislature of the State of West Virginia, passed on the 28th day of February, 1872, and that the place where the accident complained of was on what was known as the 'S. W. Johnston Farm,' referred to in said act, then the city is not liable to plaintiff for any injury happening to him by reason of a defective sidewalk on said farm, although the jury may believe that the said S. W. Johnston had, prior to 28th February, 1872, sold and conveyed away to others that particular part of said farm where the alleged defective walk was located.

The language, "the farm of Samuel W. Johnston, on which he now resides," under said act of the legislature of 28th February, 1872, means, "the entire farm as it formerly stood in the corporate limits of said city, as set out in the charter of said city."

The case having been submitted to a jury, they found a verdict for the plaintiff, assessing his damages at six hundred and thirty seven dollars and fifty cents. The defendant then moved to set aside the verdict as contrary to the law and the evidence, but the court refused, and gave judgment against it, which it has made the subject of an exception before this Court.

The questions involved in this case for our consideration have been so frequently before the Court that we ought to find no difficulty in reaching a conclusion in accordance with the principles heretofore firmly established, and to disturb which would be a dangerous precedent.

The Code provides (c. 43, s. 31) as follows: "Every county road, bridge, and landing, and every street and alley in an incorporated city, town, and village, heretofore established and opened pursuant to law, and which has not been lawfully discontinued or vacated, shall continue as such until properly discontinued; and every road, street, or alley used and occupied as a public road, street, or alley, shall in all courts and places be taken and deemed to be a public road, street, or alley (as the case may be) whenever the establishment thereof as such may come in question."

In commenting on this section of the Code in the case of *Yates* v. *Town of West Grafton*, 33 W. Va. 508 (11 S. E. Rep. 8) this Court held: "Under section 31 of chapter 43 of the amended Code, which is the same as section 31 of chapter 14 of the Acts of 1881, when the owner permits the use of his land as a public road, street, or alley for a long time such use will not now be presumed to be a mere license but a dedication; and the acceptance of the county or city or incorporated town need not be proved by matter of record, but may be presumed from acts of recognition, acceptance and claim." In the opinion of the Court it will be found that, to establish this acceptance by matter *in pais*, it need only be proved that the town authorities have taken jurisdiction over the street or alley, and worked it or kept it in repair, or undertaken to do so.

The same doctrine is held in *Childrey* v. *City of Huntington*, 34 W. Va. 457 (12 S. E. Rep. 536) in which is held by the Court: "In an action against a city or town to recover damages for injuries received on account of an alleged defect in the sidewalk, the plaintiff must allege and prove that such street or sidewalk upon which the injury occurred was at the time when and place where the injury was sustained controlled and treated by the town authorities as a public street or sidewalk, and opened as such."

In *Sheff* v. *City of Huntington*, 16 W. Va. 308, p't 15 of

Syll., this Court held : " In an action for an injury, where it is material to the plaintiff's case to prove that a road mentioned and described by the declaration is a public road, and the uncontradicted evidence before the jury shows that the said road had been used as a public road for forty years, and that the street commissioner of the city, defendant in the action, had for years kept it up as such, the jury are warranted in finding that it was a public road."

In *Wilson* v. *Wheeling*, 19 W. Va. 325, p't 12 of Syll., it is held : " If the authorities of a city have treated a place as a public street, taking charge of it and regulating it as they do other streets, and an individual is injured in consequence of the negligent and careless manner in which this is done, the corporation can not, when it is sued for such injury, throw the party upon an inquiry into the regularity of the proceeding by which the land became a street, or into the authority by which the street was originally established." In the opinion of the court in the case last cited HAYMOND, J., cites *Mayor* v. *Sheffield*, 4 Wall. 189, approvingly, which, upon examination, will be found fully to sustain his position, and which is likewise approved and sustained by Mr. Elliott in his late valuable work on Roads & Streets, p. 23. See also 101 Mo. 613.

There can be no doubt, therefore, looking to the express letter of our law and to the many decisions construing it, that when the plaintiff proves that the authorities of the city have treated a place as a public street, taking charge of it and regulating it, constructing sidewalks, and imposing taxes upon contiguous owners to keep them in repair, an individual who is injured in consequence of the negligent and careless manner in which these duties are performed will be regarded as having made out a *prima facie* case against the city when he has proved the facts above stated, and he cannot be required to resort to any further or record evidence to hold the town or city liable for an injury which is received through the negligence of the municipal authorities at a point so situated. In this case, therefore, the evidence fully proved that the city had taken full jurisdiction over the sidewalk where the injury occur-

red, had opened it to the public, worked it, and repaired it, and established it as a public highway.

The defendant, to meet the *prima facie* case thus made out against the city, so far as its jurisdiction over this sidewalk was concerned, introduced an act of the legislature, by which the farm of one S. W. Johnston was to be excluded from the city limits. The act expressly recites that it is for the "relief" of said Johnston, and it is apparent that it applied only to the farm on which he resided at the date of the act. The act itself, therefore, was of no value as an item of evidence, unless it were followed up by further testimony showing that the boundaries of Johnston's tract at the date of the act included that portion of Fourth avenue where the accident occurred. This additional evidence the defendant did not introduce, nor undertake to do so; on the contrary, it proved by parol testimony of one of its own witnesses that the place where the accident occurred "was sold out of the same"—that is, out of the Samuel W. Johnston land. The defendant, therefore, not only failed to meet the burden which devolved upon it, but actually proved that the point in dispute was not a part of the Johnston farm, having been sold out of it. If, therefore, we should even be of opinion, contrary to the authority of *Wilson* v. *Wheeling*, as above cited, and to the express language of our statute, that the defendant could escape responsibility by proving that the point in dispute was technically outside of the corporate limits, nevertheless, in the present case, as a question of fact for the jury, the defendant has totally failed to identify this point as being excluded from the city limits. This disposes of the instruction asked for by the defendant. To define the limits of the Johnston farm when the act of the legislature was passed so as to make the law effectual to carry out its express intent to relieve said Johnston, was a question of evidence, and not of legal construction.

. We come now to consider the evidence of the plaintiff, which forms the subject of the appellant's second bill of exceptions. It is maintained that the sale of any portion of the Johnston farm, and especially the date of such sale, could only be proved by the production of the deeds.

In order to give this proposition any validity whatever it would be first necessary to prove that there were any deeds, or that the plaintiff had any authority or control over them. No such evidence was adduced. The fact that the city had by its authorities treated the sidewalk where the accident occurred as a public street, had taken charge of it and regulated it as they did other streets, and the possession and ownership of contiguous lots, were all facts which it was not necessary to prove by other than parol testimony; nor has any other rule than this ever been established or recognized in this State. *Sheff* v. *City of Huntington*, 16 W. Va. 308; *Yates* v. *Town of West Grafton*, 33 W. Va. 507 (11 S. E. Rep. 8); 1 Greenl. Ev. § 186.

Upon this subject Mr. Abbott also says: "Ordinarily, evidence that the property, mismanagement of which caused the injury, was owned by and in the control of defendant, is *prima facie* evidence that the negligence was imputable to him. To make a municipal corporation liable for the unsafe condition of public property, its custody and control of the property must be shown. Ownership and possession may each be proved by direct testimony of a witness to the fact, subject, of course, to cross-examination." Abb. Tr. Ev. p. 590, § 23.

In *De Wolf* v. *Williams*, 69 N. Y. 621, we have the following rulings: A witness was asked, "Whose was the property in the house 516 Pacific street?" This was objected to as a question of law. The objection was overruled, and witness answered that it was hers. Held, that the question and answer were proper; that the title to property was ordinarily a simple fact, to which a witness having the requisite knowledge could testify directly. It will be observed that no objection was raised to this testimony at the time that it was given in, and no notice given the plaintiff to produce better evidence, nor any evidence adduced that better evidence existed, or was accessible to the plaintiff. It was within the discretion of the trial judge to refuse to exclude the evidence, or to strike it out after it had been admitted without objection. 1 Thomp. Trials, § 716.

It was not incumbent on the plaintiff to introduce any

evidence whatever touching the Johnston farm; and the defendant, after having made this motion to exclude, went on to introduce similar parol testimony to locate the Johnston farm without the introduction of any written or record testimony whatever, and he further proved by the city solicitor "that he did not know where the western boundary line is, and did not believe any one else does; that there has been a dispute since the passage of the above set out act of the legislature whether or not the portion of West Huntington where the injury occurred is within the corporate limits."

As we have seen, according to previous decisions of this Court, the city, after having taken charge of this street, was estopped to allege want of authority, whether because it was outside the corporate limits or otherwise; hence, in any view of the case, we ought not to interfere with the judgment upon the ground of the court's refusal to strike out the evidence embraced in the bill of exceptions which we are now considering. Neither was there any error in granting the plaintiff's instructions.

We come now to consider the motion for a new trial, based upon the ground that the verdict was not warranted by the evidence as set out in bill of exceptions No. 1.

The law applicable to this case was thoroughly discussed and accurately defined in *Moore* v. *City of Huntington*, 31 W. Va. 842 (8 S. E. Rep. 512.) The evidence in that case as set out in the opinion is as follows: "That she (the plaintiff) has for a number of years resided on the north side of Third avenue and corner of Twenty Fourth street in the city of Huntington. That on the morning of November 8, 1886, she started, with a basket of kindling wood on her arm, to the Third-avenue school-house, which is situated on the south side of said avenue, some distance west of her residence, to sweep and build a fire in said school-house, of which she was janitress, employed as such by the defendant at eight dollars per month. That in going to the school-house she passed out of her yard gate; thence crossing a ditch on a plank to Third avenue at the north end of a culvert built in and at right angles across the avenue; thence she crossed the avenue on the covering of said cul-

vert to the sidewalk on the south side; thence, turning west, in the direction of the school-house, she stepped on one of the planks leading from the culvert, and constituting part of the sidewalk, when the plank suddenly broke at the end where it rested on said culvert, and she fell, striking her back about the shoulder-blade against the edge of the plank covering of the culvert, and her left side against the remaining plank, which was lying along side and parallel with the plank on which she had stepped.   *  *   *   That the sidewalk was torn up some time in August, 1886, in order to put in the culvert; and the culvert was completed about the middle of September following.   The said two planks were placed there when the culvert was completed, and were constantly used by the public from the time until plaintiff was hurt.   That she had seen these planks down, and put them up several times for the school children.   The planks were not nailed down.   That she passed and repassed over them twice every day since the culvert was finished.   Said planks were a part of the Third-Avenue sidewalk, and passed over by many persons, day and night.   There was no sidewalk on the opposite or north side of the avenue from her residence to the school-house.   In going over the culvert she was always careful, knowing the planks were not nailed.   Before stepping on the plank she noticed that they were well drawn upon the culvert.   That she spoke to the mayor of the city about the place three weeks before she was injured.   That while the culvert was building she would sometimes pass down Third avenue.   There was some water on the street part of the time, but the walking was good, and the street was in as good condition as it could be while the culvert was building.   She could see the culvert from her house, and knew all about it.   That in making the culvert it was necessary to tear up the sidewalk, and it was six or eight weeks before it was permanently replaced.   That several times she saw the planks down, and put them up; and others did the same.   That the plank, when she stepped on it, broke, and did not slip off.   That she could have gone down the wagon road to the railroad crossing, and thus avoided the bad sidewalk, witout increasing the distance

very much. There was much other evidence corroborating this testimony of the plaintiff. Other witnesses testified that the planks seemed sound, and were constantly used by the public; many persons passing over them day and night. After the plaintiff was hurt, the pieces of plank were lying on the ground. One piece, six or eight inches long, was broken off, and it looked rotten. Another witness said it was decayed where it broke off."

Let us now place in juxtaposition the evidence relating to the actual injury and circumstances of the accident, as detailed by the plaintiff in the present case: "About 10 o'clock A. M. he left his residence on Fourth avenue, in that part of the city of Huntington known as 'West Huntington,' with the intention of going down to the Ohio river for the purpose of looking at the high water; and that, while walking on a sidewalk on the north side of said Fourth avenue, at a place about 60 yards west of his residence, in front of the house and lot of one McIntosh, and in said West Huntington, he slipped, and fell backwards to the right by the turning of a loose plank, about six feet long, lying lengthwise with said walk. That the east end of said plank was resting on a cross-tie or stringer, and the west end of same off of the cross-tie or stringer at that end, and down upon the ground. That in falling, as aforesaid, he endeavored to save himself from injury by reaching and catching with his right hand, and in so doing the thumb of said right hand was twisted and turned backwards, whereby his thumb was bruised and sprained and caused him to suffer so great pain that his physician, Dr. E. S. Buffington, kept him under the influence of chloroform for one week. * * * That at the time of said injury plaintiff lived in West Huntington, where he still resides, and has resided since the fall of 1889, and about 60 or 70 yards east of the place of the accident. That the sidewalks everywhere in that part of the city had been for some time prior to the time of injury in bad condition; and that on the morning of the said 26th day of March, 1890, it had been raining, and he was walking along carefully. That plaintiff did not know of said plank being loose. That when he recovered from the shock of the fall he was sitting on the

edge of the sidewalk, near the west end of the plank in question, which end was off the cross-tie, and resting on the ground, about four inches below the level of the walk, with east end still resting on its proper place on the cross-tie. That he did not know whether the west end was off of the cross-tie that morning before he stepped on it or not. That said sidewalk is three or four feet wide. There is no walk on the opposite side of the avenue in that part of the city."

I have thought it proper to place the evidence in these two cases in juxtaposition because the great similarity of the facts and circumstances in the two cases will render the former case a controlling authority for our decision in this.

The question is whether the plaintiff was plainly guilty of negligence *per se*, or contributory negligence, in contemplation of law; for, if so, he can not recover. But, if on the other hand, his contributory negligence, if any, appears to be a mixed question of law and fact, it was a question for the jury, and we can not interfere with their verdict. Upon examining the evidence in the two cases, respectively, it would appear that uniformity of decision would require us to decide that this was a case proper for the jury. The plaintiff proves that he was proceeding with care; that he was entirely unaware of the dangerous condition of the loose plank, although he knew that all the sidewalks in that part of the city were in bad repair. Although another witness proved that that defect in the walk had been there for about twelve months, yet there was no evidence that the plaintiff had been along there before, or was required to pass that spot ordinarily in going to his business. Whether the defect was of that plain and patent character which the plaintiff's observation, prudently exercised, would inform him was dangerous, or whether the accident resulted from a defect which at the time reasonable prudence and care could not detect, was, in this case, so doubtful as a question of fact, that it become the appropriate subject of decision by the jury; and in such cases the Court will not interfere with their verdict.

The value of judicial opinion as a standard of authority is much enhanced by uniformity of decision, and it is al-

ways inexpedient to fritter away firmly established opinions
by subtle refinements and hypercritical distinctions. The
case of *Moore* v. *City of Huntington* rules this case in all es-
sential particulars, and we must therefore decline to inter-
fere with the verdict of the jury or the judgment of the
Circuit Court, and that judgment is affirmed.

AFFIRMED.